**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARC ALEXANDER; TIMOTHY CLARK;
GEORGE FRYE; ROBERT A. MOORE;
ANGELA MOORE; RICHARD SAXBERG;
JOSH DAVID REEDY,
Plaintiffs-Appellants,

v.

M. H. ESTEPP, individually and in
his capacity as Fire Chief; YVONNE

TYLER, individually and in her
official capacity; PRINCE GEORGE'S
COUNTY; MAUREEN HENNESSY,
individually and in her official
capacity; WILLIAM H. GODDARD,
individually and in his official
capacity,
Defendants-Appellees.

No. 95-2978

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-93-2636-AW, CA-94-2090-AW)

Argued: June 5, 1996

Decided: September 5, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
MACKENZIE, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opinion. Judge Michael wrote the opinion, in which Chief Judge Wilkinson and Senior Judge MacKenzie joined.

_____

**COUNSEL**

**ARGUED:** Daniel F. Goldstein, BROWN, GOLDSTEIN & LEVY, Baltimore, Maryland, for Appellants. Henry Robbins Lord, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Joseph B. Espo, Lauren E. Willis, BROWN, GOLDSTEIN & LEVY, Baltimore, Maryland, for Appellants. Leonard E. Cohen, Ann L. Lamdin, PIPER & MARBURY, L.L.P., Baltimore, Maryland; Barbara L. Holtz, Acting County Attorney, Sean D. Wallace, Deputy County Attorney, PRINCE GEORGE'S COUNTY, MARYLAND OFFICE OF LAW, Upper Marlboro, Maryland, for Appellees.

_____

**OPINION**

MICHAEL, Circuit Judge:

The plaintiffs are six white men and one white woman who sought employment as Prince George's County, Maryland, firefighters in 1993 and 1994. They sued fire department officials and the county under 42 U.S.C. §§ 1981 & 1983, alleging that the department's affirmative action program impermissibly discriminates on the basis of race and sex, in violation of the Equal Protection Clause of the Fourteenth Amendment.[1] The district court granted the defendants' motion

_____

[1] The individual defendants and their positions and roles are as follows: M.H. (Jim) Estepp is the county's fire chief. Maureen Hennessey was an officer in the fire department's Administrative Services Division of the Management Services Command and played a key role in hiring new recruits. William F. Goddard, III, was the lieutenant colonel in charge of the Management Services Command and also played a key role in hiring. Yvonne R. Tyler, a civilian employee of the fire department, is the administrative assistant in charge of personnel and is the recruitment and examination board administrator.

2

for summary judgment and denied the plaintiffs' cross-motion for summary judgment.

We affirm in part the judgment of the district court, and we reverse in part. We hold that (1) the department's affirmative action program is invalid because it is not narrowly tailored to achieve its goals, (2) further proceedings are necessary to determine whether plaintiff Josh Reedy would have been hired but for the existence of the program, (3) the other plaintiffs were not denied employment because of their race or sex, and (4) the individual defendants have not established that they are entitled to qualified immunity.

I.

Prince George's County chooses its firefighters in the following manner. Applicants must take a pass/fail performance examination and a written examination. Those who pass both are interviewed. Each applicant is scored based on his or her performance on the written examination and in the interview. The department then groups the applicants into three "bands"--"Outstanding," "Well Qualified," or "Qualified"--based on their combined scores. Within each band, applicants are ranked based on their "preference level." A county ordinance requires that within the same band (Outstanding, Well Qualified, or Qualified), firefighter applicants are to be hired in the following order:

(1) Current county employees seeking promotions;

(2) Disabled military veterans;

(3) Non-disabled veterans who were volunteer firefighters;

(4) All other non-disabled veterans;

(5) All other former volunteer firefighters;

(6) Displaced homemakers not in any of the above categories;

(7) County residents not in any of the above categories;

3

(8) All other persons.

Prince George's County Code § 16-162(d)(2)(i). The preferences for volunteer firefighters ((3) & (5)), however, may be eliminated if the county's personnel officer certifies in writing to the fire chief that continued use of the preference "will have a disparate impact on a protected class as defined by the guidelines of the Equal Employment Opportunity Commission." Prince George's County Code § 16-162(d)(4). Applicants within the same band who have the same preference level are ranked on the basis of their combined examination and interview scores. The department maintains a list of the applicants and their total rank (based on band, preference, and score). This list is called the "Applicant Register," and it is continually updated as new applicants apply and existing applicants withdraw their applications.[2]

The mechanics of the department's affirmative action program have never been committed to writing, but the record indicates that the program works in the following manner. Each recruiting season fire department officials set informal caps on the number of whites and the number of males who will be offered employment.[3] The department offers applicants employment in the order in which they are listed on the Applicant Register, but once a cap is reached (either for whites or for males), a lower ranking, uncapped applicant is offered employment instead of a higher ranking, capped applicant.

The informal caps are imposed in an effort to meet affirmative action goals set (in percentages) by the county. In the past the county's goals have tracked Census data. In 1993 and 1994 the county set goals of having 18 percent of its workers female and 39 percent non-white or Hispanic. Currently, 16 percent of county protective services personnel (firefighters and paramedics) are female and 38 percent are

_____

[2] The district court correctly held that the Applicant Register was not inadmissible hearsay. The Applicant Register "set[ ] forth [ ] the activities of" the fire department, namely, the ranking of applicants for employment. Fed. R. Evid. 803(8)(A).

[3] The parties dispute what these "caps" should be called. The plaintiffs have described them as quotas; the defendants call them flexible goals. We believe the term "informal caps" is the most appropriate description.

4

non-white or Hispanic. County officials have said that they expect to increase the affirmative action percentage goals in order to track new Census data expected to show increases in the county's minority population and in the percentage of female participation in the workforce.

The plaintiffs complain specifically about the 1993 and 1994 hiring seasons. In 1993 the department offered employment to thirteen applicants. According to the Applicant Register, none of the plaintiffs ranked better than fourteenth in that hiring season. In 1994 the department offered employment to nine applicants. Plaintiffs Marc Alexander and Angela Moore received and accepted offers. **4** Five other applicants accepted offers of employment. Plaintiff Josh Reedy ranked eighth on the Applicant Register, but the department did not offer him a job. The remaining plaintiffs ranked lower than ninth.

The plaintiffs sued seeking injunctive, declaratory, and monetary relief. The district court rejected all of their claims and entered summary judgment in favor of the defendants.**5**

II.

We believe that the department's affirmative action program, as it is currently structured, cannot pass constitutional scrutiny, even

_____

**4** Moore received an offer because of the existence of the affirmative action program.
**5** The district court held as a preliminary matter that all the plaintiffs had standing, including those who would not have been hired even in the absence of the department's affirmative action program. We affirm this ruling. "The injury in cases of this kind is that a `discriminatory classification prevent[s] the plaintiff from competing on an equal footing.' The aggrieved party `need not establish that he would have obtained the benefit but for the barrier in order to establish standing.'" Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097, 2105 (1995) (quoting General Contractors v. Jacksonville, 113 S. Ct. 2297, 2303-04 (1993)) (internal citation omitted, modification in original). Standing is proper even where a program "establishes `goals' rather than rigid `quotas.'" Bras v. California Pub. Utils. Comm'n, 59 F.3d 869, 875 (9th Cir. 1995), cert. denied, 116 S. Ct. 800 (1996); accord Omnipoint Corp. v. FCC, 78 F.3d 620, 628 (D.C. Cir. 1996).

5

though "[t]he unhappy persistence of both the practice and the lingering effects of racial discrimination against minority groups in this country is an unfortunate reality, and government is not disqualified from acting in response to it." Adarand, 115 S. Ct. at 2117.

All racial classifications--even those intended to benefit minority groups--are subject to strict scrutiny. Id. at 2111 (racial classifications are "inherently suspect" and receive"a most searching examination") (citations omitted); see also City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989). "Racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification." Adarand, 115 S. Ct. at 2113 (quoting Fullilove v. Klutznik, 448 U.S. 448, 537 (1980) (Stevens, J., dissenting)). An affirmative action program may be upheld only if it is narrowly tailored to serve a compelling governmental interest. Id.

The county argues that its program is intended to benefit African Americans and women by serving, among others, the following goals: (1) redressing present effects of past and current incidents of discrimination and harassment within the department, (2) sending a message that the department respects diversity and that discrimination and harassment will not be tolerated, (3) promoting more effective fire prevention and firefighting by fostering the trust of a diverse public, and (4) serving educational goals by providing children with racially and sexually diverse role models. The district court found that the first interest asserted was compelling. The court relied on (1) "extensive statistical evidence of discrimination" against African Americans and women, (2) evidence that discriminatory behavior and attitudes within volunteer fire departments carried over into the county fire department,**6**

_____

**6** According to the defendants, at one time all volunteer fire departments but one, Chapel Oaks, excluded African Americans from membership. Even though volunteer departments no longer formally exclude African Americans, the County claims that an atmosphere of racial intolerance still pervades many volunteer departments, making African Americans feel unwelcome and less likely to join. In addition, many women have reported that they were sexually harassed while they were members of volunteer departments and that male members of the departments made it known that women were not welcome. African Americans and women were not allowed to ride fire trucks in some volunteer departments, for example, and were subject to hazing and offensive epithets.

6

and (3) anecdotal evidence of harassment of African American and female members of the county fire department. The plaintiffs challenge these findings, primarily on the grounds that most acts of harassment and discrimination occurred long ago and that there is no present evidence of racial or sexual animus within the Prince George's County fire department. We need not resolve this dispute because even assuming, arguendo, that the asserted interests are compelling, the program is not narrowly tailored because the means chosen by the department are not related closely enough to the interests asserted.

The program is not narrowly tailored because means less drastic than outright racial classification were available to department officials. In particular, the Prince George's County Code expressly provides that the fire department may eliminate its volunteer preference in order to encourage diversity within the department. The department did not, however, take that simple step. Indeed, if discriminatory attitudes within the county fire department owe their origin to practices within volunteer fire departments, as the defendants claim, then the most logical solution is to deny volunteer firefighters the hiring preference they currently enjoy. If a governmental body finds itself linked to a private entity that discriminates, the government should sever its ties to the discriminating entity before resorting to reliance on a suspect classification. "[E]xplicit racial preferences, if available at all, must be only a `last resort' option." Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993); see also United States v. Paradise, 480 U.S. 149, 171 (1987) (plurality opinion); In re Birmingham Reverse Discrimination Employment Litig., 20 F.3d 1525, 1546-47 (11th Cir. 1994), cert. denied, 115 S. Ct. 1695 (1995).

Another defect in the program is its tendency to benefit particular minority groups that have not been shown to have suffered invidious discrimination. The county claims that past pervasive discrimination against African Americans requires it to maintain its affirmative action program. The current program, however, treats all minority groups alike, even though the county has presented evidence only of discrimination against African Americans. The department has, for example, passed over white applicants in favor of Hispanics and South Asians, but there is no record evidence of discrimination

7

against Hispanics or South Asians. This failure to match particular racial or ethnic preferences with particular acts of discrimination against particular racial or ethnic groups also shows that the program as currently structured is not narrowly tailored. J.A. Croson, 488 U.S. at 506; accord id. at 510-11 (O'Connor, J., concurring).**7**

III.

A.

None of the plaintiffs (except for Reedy, whose case we discuss below) ranked high enough on the Applicant Register to have been offered a job even in the absence of the fire department's affirmative action program. Because the existence of the affirmative action program did not cause them to be denied employment opportunity, the plaintiffs (except Reedy) may not be awarded any personal relief. See St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2752 (1993); Jiminez v. Mary Washington College, 57 F.3d 369, 377-78 (4th Cir.), cert. denied, 116 S. Ct. 380 (1995); Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam).

The plaintiffs argue that their rank on the Applicant Register is suspect due to department officials' discriminatory method of administering and scoring exams and interviews. The district court rejected this claim, as do we. We have conducted a de novo review of the record evidence, and we agree with the district court that the plaintiffs have not forecast sufficient evidence showing "that the Department `played with the process' to ensure the hiring of minority applicants." Dist. Ct. Op., at 7. We affirm the denial of personal relief to all the

_____

**7** We also note that no written fire department document describes the mechanics of the program's operation. Because the program here is unwritten, judicial examination of its provisions is more difficult, lending support to our finding that the program is not narrowly tailored. Cf. White v. Roughton, 530 F.2d 750, 754 (7th Cir. 1976) (per curiam) ("[f]air and consistent application of [ ] requirements requires that [ ][ ] written standards and regulations" be established); Baker-Chaput v. Cammett, 406 F. Supp. 1134, 1140 (D.N.H. 1976) ("the establishment of written, objective, and ascertainable standards is an elementary and intrinsic part of due process").

8

plaintiffs (except Reedy) for the reasons stated in the district court's opinion. Id. at 7-9.

B.

Reedy's case is different. He ranked eighth on the Applicant Register in a recruiting season when the department made nine offers. Three of those offers went to affirmative action candidates ranked lower than he. Thus it appears that Reedy would have received an offer of employment in the absence of the affirmative action program and that therefore he should be considered for relief. The defendants claim, however, that Reedy was not offered a job because other applicants refused their offers too close to the beginning of the department's training period for a job offer to have been made to Reedy. The district court should have addressed the factual issue of whether Reedy would have been offered employment in the absence of the department's affirmative action program.[8] We therefore remand Reedy's personal claim to the district court for a new determination of whether he is personally entitled to relief.

IV.

The district court also held that the individual defendants were entitled to qualified immunity. We disagree.

Government officials performing discretionary functions are immune from civil liability unless "in the light of pre-existing law the unlawfulness [of their conduct is] apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The plaintiffs may overcome this qualified immunity only if they can demonstrate that the defendants' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus the question is whether the individual defendants should have known in 1993 and 1994 that the fire department's affirmative action program was unconstitutional.

_____

[8] According to the district court, Reedy was not hired because three white males ranked higher than he did. Dist. Ct. Op., at 6. However, because the program is invalid, this comparison is not relevant; Reedy must be compared to all applicants, regardless of their sex or race.

9

In 1989 the Supreme Court's decision in J.A. Croson (affirming our 1987 decision striking down an affirmative action program, see 822 F.2d 1355) should have put all reasonable administrators of local affirmative action programs on notice that their programs would be subject to strict scrutiny. In that case the Supreme Court expressly said that an affirmative action program may not give benefits to minorities in general, but it must target benefits only to particular groups that were the subject of particular acts of discrimination: "The random inclusion of racial groups that, as a practical matter, may never have suffered from discrimination" in the particular field and in the particular location "suggests that perhaps the [defendant's] purpose was not in fact to remedy past discrimination." J.A. Croson, 488 U.S. at 506. Furthermore, in Podberesky v. Kirwan, 956 F.2d 52 (4th Cir. 1992), we reaffirmed the importance of maintaining a close nexus between the remedy and the discrimination the remedy is intended to correct. Fire department officials at least should have re-evaluated the mechanics of and need for their affirmative action program at that time. Also, by the time of the 1994 hiring season, a reasonable official would have been aware of two of our opinions, Hayes (1993), supra, and Maryland Troopers Ass'n, Inc. v. Evans, 993 F.2d 1072 (4th Cir. 1993), in which we held state affirmative action programs invalid because they were not narrowly tailored to serve compelling state interests. Thus we believe that the individual defendants have not established their entitlement to qualified immunity because case law (about which a reasonable official would have known) had clearly established by 1993 and 1994 that the department's affirmative action program failed to satisfy the strict requirements of the Equal Protection Clause.

V.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded for fashioning of appropriate injunctive and declaratory relief, for consideration of whether plaintiff Reedy was denied an offer of employment because of his race or sex, and for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

10