**ORDERED AND ADJUDGED** that the appeal of the order entered on June 12, 1996 is **DISMISSED** due to lack jurisdiction; and further

**ORDERED AND ADJUDGED** that the August 30, 1996 order denying Rule 60(b) relief is **VACATED;** and finally

**ORDERED AND ADJUDGED** that this matter is **REMANDED** to the Territorial Court for further proceedings consistent herewith.

Ethan ROSENFELD, et al.

v.

MONTGOMERY COUNTY PUBLIC SCHOOLS, et al.

No. Civ. L–98–1793.

United States District Court, D. Maryland.

March 4, 1999.

John Montgomery, Washington, DC, for plaintiffs.

Patricia A. Brannan, and Hogan and Hartson, L.L.P., and Judith S. Bresler and

Reese and Carney, L.L.P., Washington, DC, for defendants.

## *MEMORANDUM*

LEGG, District Judge.

Plaintiffs, Ethan and Arielle Rosenfeld, filed this racial discrimination case against: i) the Montgomery County Public Schools ("MCPS"); ii) the Montgomery County Board of Education ("the Board"); iii) Dr. Paul Vance, individually and in his official capacity as superintendent of schools and a member of the Board; and iv) all other members of the Board in their official capacities.[1]

Both plaintiffs seek injunctive relief against all defendants in their official capacities under the Equal Protection Clause of the Fourteenth Amendment (Count I) and Title VI of the Civil Rights Act, 42 U.S.C.2000d (Count II). Ethan also seeks $300,000 in damages under the Equal Protection Clause and 42 U.S.C. § 1983 from all defendants in their official capacities (Count III) and from defendant, Vance, in his personal capacity under § 1983 (Count IV).[2] Before the Court is a Partial Motion to Dismiss, filed by all defendants.[3]

The defendants seek dismissal of Counts I and II on the ground that the plaintiffs lack standing to pursue injunctive relief. The defendants seek dismissal of Count III on the ground that they, in their "official" capacities—the sole capacity in which they are sued in this count—are immune from liability under the Eleventh Amendment. Dr. Vance, the only defendant named in Count IV, has not moved to dismiss that count.

For the following reasons, this Court shall, by separate Order, GRANT IN PART and DENY IN PART the Motion to Dismiss.

## I. Background

Plaintiffs, Ethan and Arielle Rosenfeld, are minor siblings who bring this action by and through their Next Friend, their father, Robert Rosenfeld. In this racial discrimination action, the plaintiffs, who are both white, allege that MCPS unlawfully gives admissions preferences to minority applicants to its public magnet schools.

In 1995, Ethan applied to one such magnet school, the Cold Spring Center for the Highly Gifted ("Cold Spring"), for the 1995–1996 academic year. (*See* Compl. at ¶ 16). At that time, Ethan was a third-grader at Beverly Farms elementary school ("Beverly Farms"), a non-magnet school in the Montgomery County public school system. (*See id.*).

Ethan alleges that his grades and test scores qualified him for admission to Cold Spring elementary school. (*See id.* at ¶ 18). He reports that his score of 58 on the Hemmon–Nelson Test of Mental Abilities "was greater than one standard deviation above the mean and higher than 12 (or 25%) of accepted students to Cold Spring; his score differential was statistically significant." (*Id.*).

With more applicants than available spaces, Cold Spring placed Ethan on a waiting list off of which he was never selected. (*See id.*). Ethan maintains that his credentials were better than those of several minority students who were accepted to Cold Spring. (*See id.* at ¶ 20).

He states, "[f]or many years now, MCPS has followed a pattern and practice of maintaining lower standards for admission of students who are Hispanic, black, or

1. These members include Nancy King, Beatrice Gordon, Alan Cheung, Blair Ewing, Reginald Felton, Ana Sol Gutierrez, and Mona Singer.

2. Although Count III does not specifically list 42 U.S.C. § 1983 as a cause of action, Ethan states in his Opposition to the Motion to Dismiss that he intended to sue under it. Ac-

cordingly, the Court will assume that Ethan brings Count III under both the Equal Protection Clause and § 1983.

3. The defendants note that there is no corporate entity called "MCPS." All parties agree that this name really stands for the Board.

members of other preferred minority groups, when such students are considered for admission to specialized schools or programs such as Cold Spring. This practice has led to the use of race-norming to admit certain less well-qualified minority students into Cold Spring and its other three Centers for the Highly Gifted ("Centers"), ahead of better qualified white or Asian–American students." (*Id.* at ¶ 23).

Now in the seventh grade, Ethan alleges that MCPS' admission policies will continue to discriminate against him. (*See id.* at ¶ 26). Although he did not apply for admission to a MCPS magnet middle school, he claims that he will apply for admission to the International Baccalaureate program at Richard Montgomery High School, a MCPS magnet high school. (*See* P's Mem. in Opp. to Ds' Part. Mot. to Dism., at 9).

Arielle's claims involve the same alleged racial discrimination. At the time this case was filed, she was a second grade student. She had recently been informed that she was designated " 'gifted and talented' " based on her standardized test scores. (*Id.* at ¶ 31). Arielle plans to apply to Cold Spring and fears that MCPS will use racial preferences when evaluating her application. (*See id.* at ¶¶ 31–32).

## II. Motion to Dismiss Standard

Ordinarily, a Complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). The liberal pleading requirements of Rule 8(a) demand only a "short and plain" statement of the claim. In evaluating such a claim, the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395

U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

## III. Discussion

### A. The Motion to Dismiss Counts I and II, for Injunctive Relief Against All Defendants in Their Official Capacities

The defendants argue that both Ethan and Arielle lack standing to bring claims for injunctive relief. The doctrine of standing addresses whether a particular plaintiff is the proper person to bring a certain case to federal court. This doctrine derives from the requirement, stated in Article III of the Constitution, that federal courts only try "cases and controversies."

Interpreting this requirement, the Supreme Court has enumerated three constitutional prerequisites for standing: i) injury; ii) causation; and iii) redressability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In other words, the plaintiff must have suffered or be on the brink of suffering some "concrete and particularized" injury. *Id.* The defendant must have caused the injury, and the injury must be redressable through the actions that the plaintiff urges the court to take. *See id.; see also Chambers Medical Technologies of South Carolina v. Bryant,* 52 F.3d 1252, 1265 (4th Cir.1995). The plaintiff bears the burden of establishing these elements. *See id.*

#### 1. Arielle's Standing

The defendants first argue that Arielle lacks standing; not having applied to Cold Spring or been rejected, she has suffered no injury. The Supreme Court, however, has extended standing to plaintiffs claiming that their Equal Protection rights are violated when they are forced to compete in an admissions process tainted by unlawful racial preferencing. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 211, 115 S.Ct. 2097, 132 L.Ed.2d 158

(1995).[4] *See also Alexander v. Estepp*, 95 F.3d 312, 315 n. 5 (4th Cir.1996).[5]

Arielle alleges that she will apply to Cold Spring no later than the spring of 1999. Thus, the date the injury is to occur is neither unspecified nor speculative. *See Chambers Medical Technologies of South Carolina*, 52 F.3d, at 1265–1266. Arielle need not wait until after she has experienced the alleged racial preferencing to file her claim.

Thus, Arielle has cleared the injury hurdle. She clears the two remaining hurdles as well. The harm she has pled—illegal racial preferencing—was allegedly caused by the defendants. The injunctive relief that she requests from this Court would be issued to the defendants, who operate the school system. Accordingly, Arielle has standing to bring this lawsuit.

### 2. Ethan's Standing

The defendants also argue that Ethan lacks standing to sue for injunctive relief. With respect to Ethan, however, the defendants' argument focuses on the redressability prong of the standing test. Acknowledging that he has pled an injury in fact caused by the defendants, they maintain that granting an injunction would not remedy the situation as Ethan is now too old to attend Cold Spring.

Once again, however, the defendants mischaracterize the injury. Now in middle school, Ethan does not seek admission to Cold Spring. Rather, he seeks an injunction forbidding MCPS from granting racial preferences to minority applicants to any of its magnet schools, including magnet high schools. Because Ethan intends to apply to a magnet high school, he has a "present interest affected by" MCPS' admissions policies. *Weinstein v. Bradford*, 423 U.S. 147, 148, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Accordingly, Ethan has standing to seek injunctive relief.

Having concluded that Ethan and Arielle have the requisite standing, the Court will deny the defendants' Motion to Dismiss with respect to Counts I and II.

### B. Eleventh Amendment Immunity

### 1. The Motion to Dismiss Count III, in Which All Defendants are Sued for Monetary Damages in Their Official Capacities

The defendants argue that the Court must dismiss Count III because they have Eleventh Amendment immunity to suits against state entities for monetary damages. For the following reasons, the Court agrees.

The Eleventh Amendment prohibits private parties from suing unconsenting states in federal court. *See e.g. Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir.1991). Eleventh Amendment immunity extends to all claims against state agencies and to claims for retrospective monetary damages against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir.1996). Thus, in this case, the relevant question is whether the defendants are state or local entities.

4. In *Adarand,* the Supreme Court said, "[t]he injury in cases of this kind is that a 'discriminatory classification prevent[s] the plaintiff from competing on an equal footing.' The aggrieved party 'need not allege that he would have obtained the benefit but for the barrier in order to establish standing.' " *Adarand Constructors*, 515 U.S., at 211, 115 S.Ct. 2097 (citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,* 508 U.S. 656, 666–667, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)).

5. Cast in this light, Arielle's future injury is "sufficiently threatened" such that it is " 'both real and immediate, not conjectural or hypothetical.' " *Chambers Medical Technologies of SC*, 52 F.3d, at 1265 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

■ The United States District Court for the District of Maryland has repeatedly held that Maryland county school boards and their members are state entities. *See Jones v. Frederick County Board of Educ.*, 689 F.Supp. 535 (D.Md. 1988); *Chi v. Board of Educ. of Harford County*, 1995 WL 131288, 3 (D.Md.1995); *Eisenberg v. Montgomery County Public Schools*, 19 F.Supp.2d 449, 452–53 (J. Williams 1998).[6]

In so ruling, the District Court has relied upon a four-part test, specified by the Fourth Circuit: i) will the state treasury be responsible for paying any ordered judgment; ii) is the entity significantly independent from the state; iii) is the entity concerned with statewide, as opposed to local, concerns; and iv) how does state law regard the entity. *See Ram Ditta v. Maryland Nat'l. Capital Park and Planning Comm'n*, 822 F.2d 456 (4th Cir.1987).

The plaintiffs contend that this line of District Court cases was overtaken when the Supreme Court modified the four-part test with *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). The Fourth Circuit has stated, however, that it does not believe that *Hess* "materially altered the Eleventh Amendment analysis we formulated in *Ram Ditta* . . . ." *Gray v. Laws*, 51 F.3d 426, 434 (4th Cir.1995). This Court, therefore, holds that MCPS and its members, in their official capacities, are state entities.

■ Because they are state entities, the defendants are protected by the Eleventh Amendment unless it has been waived. The plaintiffs argue that the defendants have waived their immunity by Md.Code, Education Article, § 4–105(a), which requires Maryland county school boards to carry liability insurance of $100,000 or greater per occurrence. In order to waive Eleventh Amendment immunity, however, a state entity must explicitly consent to be

sued in *federal* court. *See* Edelman, 415 U.S., at 673, 94 S.Ct. 1347; *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). This, the defendants have never done. *Accord Jones*, 689 F.Supp., at 538.

■ Even if the defendants had waived their immunity, the Court would, nevertheless, be required to dismiss Count III. A party cannot bring a suit for monetary damages directly under the Fourteenth Amendment. *See Lemberos v. Laurel Racecourse, Inc.*, 489 F.Supp. 1376, 1380 n. 3 (D.Md.1980). The plaintiffs mistakenly point to *Croson* as recognizing that a plaintiff can receive both injunctive relief and damages under the Fourteenth Amendment. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). In *Croson*, however, the Supreme Court specifically stated, "Croson brought this action under 42 U.S.C. § 1983 in the Federal District Court for the Eastern District of Virginia. . . ." *Id.* at 483, 109 S.Ct. 706. Thus, *Croson* does not stand for the proposition that a plaintiff can sue for damages directly under the Fourteenth Amendment.

■ A plaintiff can, however, bring suit for damages under authority of a statute, such as 42 U.S.C. § 1983. Section 1983, however, creates only a right of action against "persons." Neither states nor state officials, sued in their official capacities, are considered "persons" for purposes of § 1983. *See Will*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45. Accordingly, for the aforementioned reasons, Count III will be dismissed.

### 2. Counts I and II

■ The parties do not address whether the Eleventh Amendment deprives this Court of jurisdiction over Counts I and/or II for injunctive relief. The Court, nevertheless, will resolve this question. In or-

---

6. These cases also note that Maryland county school boards are state entities under Maryland law. *See Montgomery County Educ. Ass'n. v. Board of Educ. of Montgomery County*, 311 Md. 303, 317, 534 A.2d 980 (Ct.App. Md.1987).

der to allow federal courts to review state policies, the Supreme Court has recognized several avenues by which a plaintiff may sue a state despite the Eleventh Amendment. Section 5 of the Fourteenth Amendment, for example, provides that Congress may enforce the Amendment by enacting appropriate statutes. The plaintiffs bring Count II under Title VI; the Supreme Court has held that state entities lack immunity from suits brought under Title VI. *See Lane v. Pena,* 518 U.S. 187, 198, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (approving 42 U.S.C. § 2000d–7, holding that Eleventh Amendment immunity does not apply to suits brought under Title VI). Accordingly, the Court will not dismiss Count II.

■ Count I, however, is brought solely under the Fourteenth Amendment of the Constitution. The Fourteenth Amendment itself does not abrogate the Eleventh Amendment. *See* 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3524, at 177–178. Nonetheless, under another exception to Eleventh Amendment immunity, a plaintiff may sue individual state officials (in their official capacities) for injunctive relief. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Accordingly, the plaintiffs can sue the members of the Board, who are individual state officials, for injunctive relief under the Fourteenth Amendment. The plaintiffs cannot sue MCPS or the Board, however, because they are not individual state officials. The Court, therefore, will dismiss Count I as to defendants, MCPS and the Board.

## IV. Conclusion

For the reasons stated above, this Court shall, by separate Order, GRANT IN PART and DENY IN PART the defendants' Partial Motion to Dismiss.